UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARTYN BRUNO,                          :
                                       :
          Petitioner,                  :
                                       :
V.                                     :    CASE NO. 3:04-CV-101(RNC)
                                       :
CONNECTICUT COMMISSIONER               :
OF CORRECTION, ET AL.,                 :
                                       :
          Respondents.                 :


RULING AND ORDER

Petitioner Martyn Bruno, a Connecticut inmate, was convicted after a bench trial of murder and tampering with physical evidence and sentenced to prison for sixty years.  He brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. All the claims in the petition have previously been rejected in state court.  The matter is now before this court on petitioner's motion for judgment.  Petitioner has not shown that he is entitled to relief.  Accordingly, his motion for judgment is denied and the petition is dismissed.

Background

Petitioner was charged with the murder of David Rusinko, who was killed in an isolated cabin in New Hartford, where he had been "partying" with petitioner and two others, Brian Bingham and Cara Ignacak.  After retaining counsel, petitioner waived a jury trial and elected to be tried by a three-judge panel.  At the

1

trial, Bingham and Ignacak testified that petitioner savagely beat Rusinko, slit his throat, and burned his corpse in the cabin's fireplace.  Petitioner admitted being present when Rusinko was killed but denied taking part in the killing.

After the three-judge panel found petitioner guilty of murdering Rusinko, he moved for a judgment of acquittal, contending that the evidence was insufficient to prove beyond a reasonable doubt that he intended to take Rusinko's life.  He also moved for a new trial, contending that the court had improperly denied his request for access to Bingham's and Ignacak's confidential psychiatric records, which he had subpoenaed for purposes of cross-examination.

Petitioner's post-trial motion was denied in its entirety.  See State v. Bruno, Case No. 18-73668, 1993 WL 280243,*2 (Conn. Super. July 14, 1993).  In rejecting the challenge to the sufficiency of the evidence, the court relied on the vicious nature of the crime, the testimony of Bingham and Ignacak concerning petitioner's words and actions on the day of the murder (and later in connection with an attempted cover-up); and the testimony of petitioner himself, whose credibility the court found to be "deficient" (partly because "his recollection appeared intentionally vague and inconsistent").  The challenge to the court's handling of the request for the psychiatric records was rejected because the request had not been supported

by a showing of a reasonable probability that the records would reveal information "especially probative of the witness[es]' ability to comprehend, know or correctly relate the truth."  Id. (citing State v. D'Ambrosio, 212 Conn. 50, 58-59 (1989)).

Petitioner appealed directly to the Connecticut Supreme Court, which rejected his claims on the merits and affirmed the judgment of conviction.  See State v. Bruno, 236 Conn. 514 (1996).

Petitioner then sought a writ of habeas corpus in Connecticut Superior Court.  The original petition, apparently prepared by petitioner himself, vigorously attacked the representation provided by his trial counsel but raised no claim concerning the validity of his waiver of a jury trial.  After counsel appeared for petitioner in the habeas proceeding, however, the petition was amended to add the following new claims: first, that petitioner's trial counsel waived his right to a jury trial without his consent in violation of his Sixth Amendment right to effective assistance of counsel; second, that petitioner's appellate counsel was ineffective in failing to challenge the lack of a proper jury waiver; and third, that the trial court failed to conduct a canvass concerning the validity of the jury waiver in violation of petitioner's Fourteenth Amendment right to due process.

The state habeas court conducted an evidentiary hearing on

3

these new claims.  Petitioner testified that he initially went
along with his lawyers' recommendation that he elect to have a
court trial on the mistaken assumption that a jury would be
impaneled.  He further testified that when he became aware of his
mistake in this regard several weeks later (after speaking with
others in jail), he promptly told his attorneys he wanted a jury
trial, but they told him it was too late to change his election
of a court trial.  Resp. App. N at 7-9.

Petitioner's testimony at the evidentiary hearing was
contradicted by both of the lawyers who represented him in the
criminal case.  They testified that they met with him at least
five times before the bench trial, advised him to elect to be
tried by a three-judge panel, obtained his agreement, and were
not told then or later that he really wanted a jury trial.  Resp.
App. N 12/6/01 at 25-28; 12/10/01 at 5-9.[1]  In addition, they
testified that they recalled petitioner being canvassed by a
judge concerning his jury waiver.

Following the evidentiary hearing, the state habeas court
rejected petitioner's claims in a written ruling.  See Bruno v.
Tarascio, No. CV 98416581S, 2002 WL 450591 (Ct. Super. March 1,
2002).  Crediting the testimony of petitioner's lawyers, the

---

[1] Their testimony concerning these meetings was corroborated
by the testimony of a private investigator who attended the
meetings as a member of the defense team.  See id. 12/6/01 at 32-
33.

4

court found that petitioner was "fully apprised of his right to a jury trial and the option of a court trial before a three-judge panel."  Petitioner's testimony that he told his lawyers he wanted a jury trial was found to be "not credible."  The ineffective assistance of appellate counsel claim was rejected because petitioner failed to establish that his counsel's performance was deficient or that any alleged deficiency resulted in actual prejudice to the defense.  See id. at *6.  The due process failure-to-canvass claim was ruled to be procedurally barred because the alleged lack of a canvass had not been objected to in the trial court, or challenged on the direct appeal, and petitioner had failed to demonstrate cause for these procedural defaults or actual prejudice resulting from the alleged error.  Id.

The state habeas court's decision was affirmed without opinion by the Connecticut Appellate Court.  Bruno v. Commissioner of Correction, 74 Conn. App. 910 (2003).  Leave to appeal to the Connecticut Supreme Court was denied.  Bruno v. Commissioner of Correction, 271 Conn. 920 (2004).

Petitioner then brought this action.  The petition reasserts the claims presented to the state habeas court concerning the jury waiver.  In addition, it reasserts the claims presented to the Connecticut Supreme Court regarding the sufficiency of the evidence and the trial court's handling of the request for the

psychiatric and school records of Bingham and Ignacak.

Discussion

A federal court may grant habeas relief to a state prisoner
on a claim adjudicated on the merits in state court only when the
state court's adjudication of the claim "resulted in a decision
that was contrary to, or involved an unreasonable application of,
clearly established Federal law, as determined by the Supreme
Court of the United States."  28 U.S.C. § 2254(d)(1).  Federal
law is "clearly established" if it is found in holdings of the
Supreme Court at the time of the state court decision.  Williams
v. Taylor, 529 U.S. 362, 412 (2000).  A decision is "contrary to"
clearly established federal law "if the state court arrives at a
conclusion opposite to that reached by [the Supreme] Court on a
question of law" or "confronts facts that are materially
indistinguishable from a relevant Supreme Court precedent and
arrives at a result opposite to [that precedent]."  Id. at 405.
The court need not identify or be aware of the governing
precedent so long as the court's reasoning and result do not
contradict it.  See Early v. Packer, 537 U.S. 3, 8 (2002).  A
state court decision is an unreasonable application of clearly
established federal law "if the state court correctly identifies
the governing legal principle from [the Supreme Court's]
decisions but unreasonably applies that principle to the facts of
the particular case."  Bell v. Cone, 535 U.S. 685, 694 (2002).

6

This inquiry focuses "on whether the state court's application of clearly established federal law [was] objectively unreasonable." Id.  The state court's factual findings are entitled to a presumption of correctness, which can be rebutted only by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); see Majid v. Portuondo, 428 F.3d 112, 125 (2d Cir. 2005).

Claims that have not been adjudicated on the merits in state court due to a procedural default by the petitioner generally do not provide a basis for federal habeas relief.  To obtain relief on such a claim, the petitioner typically must show both cause to excuse the default and actual prejudice arising from the alleged violation of federal law on which the claim is based.  See Coleman v. Thompson, 501 U.S. 722, 750 (1991).  As discussed in detail below, petitioner has not made the showings required by these standards.

I. <u>Ineffective Assistance of Counsel</u>

To prevail on a Sixth Amendment claim of ineffective assistance of counsel, a defendant must satisfy the two-prong test of <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  Under this test,

> a defendant must first show that his counsel's performance was deficient and must then show that the deficiency caused actual prejudice to his defense.  The deficiency prong is established by showing that the attorney's conduct fell "outside the wide range of professionally competent assistance." [Strickland, 466 U.S. at 690].

> The prejudice prong is established by showing that there is a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." <u>Id.</u> at 694.
>
> * * * *
>
> In evaluating the evidence of whether an attorney's representation of a criminal defendant is deficient, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689; <u>see Bloomer v. United States</u>, 162 F.3d 187, 1923 (2d Cir. 1998).

<u>Clark v. Stinson</u>, 214 F.3d 315, 321 (2d Cir. 2000).

### A.   <u>Trial Counsel</u>

Petitioner claims that his trial counsel rendered ineffective assistance "in that [they] waived [his] right to a jury trial without [his] consent, violating his 6th and 14th Amendment rights . . . ." Pet.'s Motion for Judgment, ¶ 1. Courts indulge a presumption that a criminal defendant has not waived fundamental rights guaranteed by the Sixth Amendment, including the right to jury trial and the right to counsel. <u>See Johnson v. Zerbst</u>, 304 U.S. 458, 464 (1938). However, a defendant may waive these fundamental rights. Waiver requires "an intentional relinquishment or abandonment of a known right or privilege." <u>Id.</u> Whether a defendant has intelligently waived a fundamental right "must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." <u>Id.</u>

8

There are two seminal cases on a criminal defendant's waiver of his right to a jury trial: <u>Patton v. United States</u>, 281 U.S. 276 (1930), and <u>Adams v. United States ex rel. McCann</u>, 317 U.S. 269 (1942).  In <u>Patton</u>, a federal defendant consented in open court to trial by less than twelve jurors after one member of the jury had to be excused due to illness.  281 U.S. at 286.  The Court held that a criminal defendant may waive his Sixth Amendment right to be tried by a jury of twelve.  <u>See</u> <u>id.</u> at 290, 298.  The Court stated that "before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant."  <u>Id.</u> at 312.  The Court cautioned that "the duty of the trial court [to ensure that consent is express and intelligent] is not to be discharged as a mere matter of rote, but with sound and advised discretion . . . with a caution increasing in degree as the offenses dealt with increase in gravity."  <u>Id.</u> at 312-13.

In <u>Adams</u>, a federal criminal defendant waived his right to trial by jury in writing while proceeding without the assistance of counsel.  317 U.S. at 270-71.  The Court ruled that "an accused, in the exercise of a free and intelligent choice, and with the considered approval of the court, may waive trial by jury," even without the guidance of counsel.  <u>Id.</u> at 275.  The Court rejected a mechanical rule that would preclude a waiver

9

except on the advice of counsel stating, "whether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case." Id. at 277-78.  Whether the defendant was represented by counsel is one circumstance to be considered.  Id. at 277.

Petitioner's claim that his trial counsel rendered ineffective assistance by waiving a jury trial without his consent is based solely on his own testimony, which has been contradicted by the testimony of his lawyers.  As noted earlier, he claims that he initially agreed to a court trial on the assumption that a jury would be impaneled and, when he learned he was mistaken, he promptly told his lawyers he wanted a jury trial but they told him it was too late.  The state habeas court rejected petitioner's testimony as "not credible."  The state court's adverse credibility finding is amply supported by the testimony at the habeas hearing provided by petitioner's counsel, which the state court was clearly entitled to credit.  Given the state court's adverse credibility finding, petitioner's claim that his trial lawyers waived a jury trial without his consent must be rejected as unfounded.

B.   Appellate Counsel

Petitioner's claim that his appellate counsel was ineffective appears to be based on two distinct grounds: the appellate lawyer's failure to challenge the waiver of a jury

trial by petitioner's trial counsel without petitioner's consent (which petitioner appears to refer to as "the illegal waiver"); and the lawyer's failure to challenge the lack of an on-the-record waiver of a jury trial by petitioner himself (which petitioner refers to as "the lack of a proper waiver").  The first of these grounds is clearly unavailing in light of the state habeas court's finding that petitioner did not tell his trial counsel he wanted a jury trial.  The second ground is unavailing for the reasons explained below.

The Supreme Court has never held that a criminal defendant has a constitutional right to an on-the-record colloquy with the court, or some other procedure, before a waiver of the right to a jury trial can be accepted.  Nor has the Court held that the Constitution requires such a waiver to be in writing.[2]  Moreover, the Second Circuit has stated that courts are not required to conduct a colloquy with a defendant waiving his right to a jury trial, although the Court recommended a colloquy to prevent

_____

[2] The Supreme Court has ruled that the Constitution requires an on-the-record canvass of a defendant before his guilty plea can be accepted.  See Boykin v. Alabama, 395 U.S. 238 (1969). Arguably, Boykin can be read to require a similar on-the-record canvass before a defendant can waive his right to a jury trial. The Court noted that a guilty plea waives the right to a jury trial.  395 U.S. at 243.  The Court also cited Carnley v. Cochran, 369 U.S. 506, 514-15 (1962), for the proposition that the record or other evidence must show that an accused intelligently and knowingly waived his right to counsel.  Id. at 242.  But neither the Supreme Court nor any Circuit Court of Appeals has extended the strict Boykin requirement to the waiver of a jury trial.

challenges such as the one presently under discussion.  See
Marone v. United States, 10 F.3d 65, 67-68 (2d Cir. 1993)
(stating that "the trial court must satisfy itself that the
defendant has intelligently consented," but explaining that a
colloquy is not constitutionally required).  Other Circuits are
in agreement with this view.  See United States v. Sammons, 918
F.2d 592, 597 (6th Cir. 1990) (colloquy not constitutionally
required; defendant may attempt to show on habeas review that the
waiver was not voluntary, knowing, or intelligent); United States
v. Chrans, 869 F.2d 1084, 1087-88 (7th Cir. 1989)(determination
of whether there has been a valid waiver depends on the
circumstances of each case, and the Constitution does not mandate
"how long the judge's explanation must be" or that the waiver be
in writing).

     In addition, careful review of the record discloses
affirmative evidence that petitioner did waive his right to a
jury trial.  On habeas review, the court may determine whether
the defendant waived this right by examining not only the record
generated in the course of the underlying criminal proceeding but
other evidence as well.  See Chrans, 869 F.2d at 1087-88(in
collateral proceeding, record or independent evidence must
indicate a valid jury waiver).  The transcript of petitioner's
trial shows that he was asked at the outset of the trial

whether he objected to the inclusion in the three-judge panel of the judge who had presided at his probable cause hearing and he said he did not.  If, as he now claims, he did not want to waive his right to a jury trial (and had not intended to do so), the court's question gave him an opportunity to make that clear before the trial went forward.  His failure to object makes sense in light of the testimony given by his trial counsel at the habeas hearing that he knowingly and intentionally waived his right to a jury trial and was canvassed by a judge in open court before his waiver was accepted.  The written decision of the trial court denying the motion for judgment of acquittal is consistent with the lawyer's testimony; it states that petitioner "waived his right to a jury trial and elected to be tried by a three judge panel."  See State v. Bruno, 1993 WL 280243,*1, No. 18-73668 (Conn. Super. July 14, 1993).  Finally, as noted earlier, petitioner's pro se habeas petition filed in state court made no claim concerning the waiver of his right to a jury trial, although it raised numerous other challenges concerning the conduct of his trial counsel.  Taking all this evidence into account, I have little doubt that petitioner waived his right to a jury trial.

As suggested by Adams, so long as there is affirmative evidence of a waiver, "the burden is on the [petitioner] to prove that the waiver was not knowing and voluntary."  Strozier v.

13

<u>Newsome</u>, 871 F.2d 995, 998 n.6 (11th Cir.1989) (discussing the right to counsel); <u>see also</u> <u>United States v. DeRobertis</u>, 715 F.2d 1174, 1178 (7th Cir. 1983).  Petitioner has not met this burden.

    II. <u>Due Process</u>

       A. <u>Failure to Canvass</u>

Petitioner does not dispute the state habeas court's determination that his due process claim based on the trial court's alleged failure to canvass him concerning his jury waiver was procedurally defaulted in the trial court and on direct appeal.  Accordingly, the claim cannot be considered on the merits unless petitioner demonstrates that the cause and prejudice test is satisfied.  Under this test, "'cause' . . . must be something <u>external</u> to the petitioner, something that cannot be fairly attributed to him." <u>Coleman v. Thompson</u>, 501 U.S. 722, 753 (1991).  "Attorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'" <u>Id.</u> (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986).

Petitioner has failed to demonstrate "cause" as thus defined.  His memorandum of law seems to suggest that he should be permitted to litigate his claim on the merits because his trial lawyers wrongly told him he could not have a jury trial and his appellate lawyer never met with him to talk about potential

14

issues for appeal.  <u>See</u> Pet.'s Mem. At 11-12.  As discussed
above, however, petitioner's allegation that he told his lawyers
he wanted a jury trial must be regarded as false (the state
habeas court having so found with ample support in the record).
Moreover, it is undisputed that petitioner never raised the issue
of the validity of the jury waiver with his appellate lawyer,
although he did correspond with him concerning the appeal and
thus had an adequate opportunity to do so.  Because petitioner
has failed to demonstrate cause as required by the cause and
prejudice test, this due process claim cannot be considered on
the merits.

     B. <u>Sufficiency of the Evidence</u>

    The Due Process Clause of the Fourteenth Amendment protects
a defendant from being convicted of a crime in state court unless
the prosecution proves every element of the offense charged
beyond a reasonable doubt.  <u>In re Winship</u>, 397 U.S. 358, 364
(1970).  Petitioner claims that the evidence presented at his
criminal trial is insufficient to prove that he intended to kill
the victim, his friend Rusinko.  Petitioner's challenge to the
sufficiency of the evidence requires the court to determine
whether the evidence, viewed fully and most favorably to the
prosecution, would permit a rational trier of fact to find this
essential element beyond a reasonable doubt.  <u>Jackson</u>, 443 U.S.
at 319; <u>Wheel v. Robinson</u>, 34 F.3d 60, 66 (2d Cir. 1994).  This

standard of review recognizes the fact finder's responsibility to resolve reasonable conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. <u>Jackson</u>, 443 U.S. at 319. This court may not re-weigh evidence or redetermine witness credibility. <u>Marshall v. Lonberger</u>, 459 U.S. 422, 434 (1983) ("Title 28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the trial court, but not by them.").

Under Conn. Gen. Stat. § 53a-54a, the elements of murder are "(1) intent, (2) causation and (3) death by killing as opposed to death by accident or suicide." <u>Connecticut v. Rasmussen</u>, 225 Conn. 55, 74 (1993). To prove the element of intent to kill, the State must prove beyond a reasonable doubt that the defendant caused the death of another "with the conscious objective to do so." <u>Connecticut v. Patterson</u>, 229 Conn. 328, 332-33 (1994) (citing Conn. Gen. Stat. §§ 53a-3(11) and 53a-54a). Intent to cause death may be inferred from the type of weapon used, the manner in which it was used, the nature and number of wounds inflicted, and events leading to and immediately following the death. <u>Connecticut v. Sivri</u>, 231 Conn. 115, 127 (1994). Intoxication is relevant to negate specific intent. <u>Connecticut v. Austin</u>, 244 Conn. 226, 239 (1998); <u>see also</u> Conn. Gen. Stat. § 53a-7. "Intoxication, however, does not automatically negate

16

intent. . . .  It is for the [fact finder] to decide, after
weighing all the evidence adduced at trial, whether a criminal
defendant's intoxication rendered him incapable of forming the
intent required to commit the crime with which he is charged."
Connecticut v. Downey, 45 Conn. App. 148, 156-57 (1997).

The evidence presented at petitioner's criminal trial would
permit a rational trier of fact to find that he consciously
intended to kill Rusinko, although he had been drinking and
taking Valium that day.  See Jackson v. Virginia, 443 U.S. 307,
325 (1979).  Ignacak testified that when they arrived at the
campsite, petitioner "stated that [Rusinko] had done some things
to him in the past that angered him and he needed to pay . . .
After talking about it more and getting more angry, there was
mention of killing him."  (Pet.'s Ex. A 14-16.)  Bingham
corroborated her testimony.  He testified that petitioner was
upset with Rusinko because of a problem with his "driver's
license and something to do with a drug deal connection." (Pet.'s
Ex. B 20.)  Bingham testified that petitioner "said he would like
to beat David Rusinko to death . . . . He said that [Rusinko] was
the one who called his drug connection . . . Then he asked if we
could somehow make a suggestion that we go up to the upper
campsite because it was – that is where he wanted the crime to be
done."  (Pet.'s Ex. B 25.)  According to Ignacak, petitioner
stated that shooting Rusinko would be "too good for him."

(Pet.'s Ex. A 16.)

Ignacak testified that petitioner subsequently beat Rusinko and "let out reasons" as he was kicking him, "like, 'This is for the DWI, this is for the cocaine, this is for the loss of my license.'" (Pet.'s Ex. A 31.)  She testified that "after the first few times he whacked Rusinko, he just seemed like he sobered up," and that his coordination seemed fine."  (Pet.'s Ex. A 38-39, B 3.)  Bingham testified that petitioner asked him for a knife, which Bingham refused to provide; that petitioner then tried unsuccessfully to cut Rusinko's throat using a pocket knife; and that petitioner then asked Ignacak for a piece of glass.  (Pet.'s Ex. C 4, B 31.)  According to Bingham, petitioner didn't like the piece of glass given to him, so he got another piece himself and once again tried to cut Rusinko's throat.  When asked if petitioner said anything during the assault, Bingham testified that petitioner said "his drug connection would not deal with him no more unless he took care of the problem"; that "he had a contract out on him for a week or two previous because of Dave"; and that "if he was to stop now, [Rusinko] would go to the police and would get in trouble anyways." (Pet.'s Ex. B 30.)

Petitioner's account differs markedly.  He testified that he saw Rusinko fall to the floor, looked down and said something like "Oh, man, is he unconscious or is he breathing."  He

18

testified that he didn't remember anything after that until he woke up, looked for his drink, and saw Rusinko's body in the fire.  He testified extensively about his drug and alcohol use that day, and presented expert testimony that he was in a state of blackout at the time of the killing as a result of severe intoxication.  Petitioner admitted that after Rusinko was dead, he helped dispose of the body, shoveling the remains into a bag and disposing of the ashes in an outhouse, and that he helped conceal evidence of the crime, including painting over blood stains and disassembling and burying Rusinko's bicycle.  He also admitted participating in a subsequent search to find Rusinko.

The three-judge court concluded that petitioner was "not so intoxicated by alcohol and/or drugs at the time of the murder that he was incapable of forming a rational intent or of controlling his will."  Bruno, 236 Conn. at 545 (quoting trial court's memorandum of decision).  This finding is more than adequately supported by the testimony of Bingham and Ignacak.  It is also supported by the testimony of an expert psychiatric witness called by the State.  Petitioner has presented no clear and convincing evidence to rebut the trial court's finding.  28 U.S.C. § 2254(e)(1).[3]

---

[3] As he did before the Connecticut Supreme Court, petitioner argues that the evidence adduced at trial was consistent with the conclusion that Bingham and Ignacak murdered Rusinko, and because the state did not sufficiently refute this hypothesis . . . a reasonable fact finder could not have found the defendant guilty

III.  <u>Denial of Access To Records</u>

Before and during his criminal trial, petitioner moved for disclosure and in camera examination of psychiatric records and school records pertaining to Bingham's and Ignacak's abilities to perceive, recall, and relate events.  (<u>See</u> Resp.'s Ex. B at 15-18.)  Under Connecticut law, psychiatric records are privileged and cannot be discovered, even pursuant to court order, without the consent of the holder of the privilege.  <u>See</u> Conn. Gen. Stat. §§ 52-146d, 52-146e.  Connecticut law permits disclosure of school records pursuant to court order on a showing that the records are relevant to the case or the witness's credibility. <u>See</u> Conn. Gen. Stat. § 10-15b(b); <u>State v. James</u>, 211 Conn. 555, 579 & n.10 (1989).  The court denied petitioner's request for in camera review, finding that he had failed to provide a sufficient foundation.  The Connecticut Supreme Court affirmed this ruling. <u>State v. Bruno</u>, 236 Conn. 514, 521-37 (1996).

Petitioner's claim before this court is that the denial of in camera review violated his constitutional rights to

---

beyond a reasonable doubt." <u>Bruno</u>, 236 Conn. at 545.  The Supreme Court has specifically rejected the theory that the evidence offered in support of a conviction must rule out every hypothesis except that of guilt beyond a reasonable doubt. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." <u>Jackson</u>, 443 U.S. at 326.

confrontation, compulsory process, and due process.  The Supreme

Court considered a similar claim in Pennsylvania v. Ritchie, 480

U.S. 39 (1987).  In that case, the defendant was charged with

sexually abusing his daughter.  During pretrial discovery, he

served a subpoena on the state protective services agency seeking

access to his daughter's records, which contained a file relating

to the charges against him and a report on a previous allegation

of abuse.  The state refused to comply on the ground that the

records were privileged under state law; however, the relevant

state statute allowed disclosure "to a court of competent

jurisdiction pursuant to a court order."  Id. at 43.  The state

court declined to order disclosure of the records and did not

review them in camera.  On appeal, the Pennsylvania Supreme Court

held that the Confrontation and Compulsory Process Clauses gave

the defendant a right to examine the records.

The Supreme Court analyzed the case under the Due Process

Clause, which requires the prosecution to disclose to an accused

evidence in its possession that is favorable to him and material

to guilt or punishment.  See Brady v. Maryland, 373 U.S. 83, 87

(1963).[4]  The Court ruled that the defendant had no due process

_____

[4] A plurality of the Court in Ritchie rejected the
Confrontation Clause claim, stating that this Clause confers a
trial right "designed to prevent improper restrictions on the
types of questions that defense counsel may ask during cross-
examination," id. at 52, and "does not compel the pretrial
production of information that might be useful in preparing for
trial."  Id. at 53 n.9.  A majority declined to examine the claim

21

right to conduct an unsupervised search of the state agency's confidential files, but was entitled to request specific material information.  See Ritchie, 480 U.S. at 59-61.  The Court stated that when confidential state files may contain material information, and the relevant state statute authorizes disclosure under court order, a court should review the files in camera and release to the defendant evidence deemed material.  See id. Importantly, under Ritchie, a criminal defendant may not require a court to review confidential records in camera "without first establishing a basis for his claim that it contains material evidence."  Id. at 58 n.15; see also United States v. Leung, 40 F.3d 577, 582-83 n.1 (2d Cir. 1994) (citing Ritchie for the proposition that "in camera review should not be required unless defense establishes basis for claim that files contain material evidence").  Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Ritchie, 480 U.S. at 57 (quoting Bagley, 473 U.S. at 682, 685); see also United States v. Coppa, 267 F.3d 132, 140 (2d Cir. 2001) ("[T]he scope of the government's constitutional duty – and,

---

under the Compulsory Process Clause, stating, "This Court has never squarely held that the Compulsory Process Clause guarantees the right . . . to require the government to produce exculpatory evidence."  Id. at 56.  In view of these aspects of Ritchie, petitioner's claims based on these Clauses also are unavailing.

concomitantly, the scope of a defendant's constitutional right –
is ultimately defined retrospectively, by reference to the likely
effect that the suppression of particular evidence had on the
outcome of the trial."). A "reasonable probability" is "a
probability sufficient to undermine confidence in the outcome."
Ritchie, 480 U.S. at 57 (quoting Bagley, 473 U.S. at 682, 685).
"Mere speculation that a government file may contain Brady
material is not sufficient to require a remand for in camera
inspection, much less reversal for a new trial." United States
v. Pou, 953 F.2d 363, 366-67 (8th Cir. 1992) (quoting United
States v. Navarro, 737 F.2d 625, 631 (7th Cir. 1984)).

Petitioner has not shown that the Connecticut Supreme Court's
affirmance of the trial court's denial of in camera review is
contrary to, or an unreasonable application of, Ritchie.
According to petitioner's motion for disclosure, he sought the
records to impeach the witnesses' "ability to accurately and
honestly relate information." (Resp.'s Ex. B at 16-17.) Under
Ritchie, for petitioner to have a constitutional right to review
of the records, he had to establish some basis for his claim that
the records were relevant to the witnesses' ability to relate
information to a material extent.

Petitioner showed that Bingham had substance abuse problems
for which he received psychiatric treatment. (Pet.'s Ex. B 36-
37.) Bingham's father described him as "troubled" and "sick"

(Pet.'s Ex. B 35) and a special education administrator,
S. Patricia Keener, described him as "social[ly] and
emotional[ly] maladjusted" (Pet.'s Ex. B 42).  Petitioner
contends that, because of the central role of alcohol in the
events surrounding the murder, and because Bingham lied about the
murder following the event, it was "reasonable to believe his
records could have obtained impeachment information relative to
his abilities to accurately perceive, recall and relate the
events at issue." (Doc. #25 at 25.)  It may be the records
contained some useful information in general, but petitioner
failed to show that they were material on the issue of Bingham's
testimonial capacity.  Moreover, petitioner was free to ask
Bingham on cross-examination about his alcohol consumption on
that night and in general.  Cf. Davis v. Litscher, 290 F.3d 943,
947 (7th Cir. 2002) (rejecting a similar habeas claim because,
among other reasons, petitioner could have cross-examined the
victim on her use of cocaine on the night of the events in
question).  He also could have impeached Bingham with the false
statements he made after the murder.  Because these lines of
impeachment were available, and because petitioner made no
showing that Bingham's emotional problems might have affected his
testimonial capacity, it is not reasonably probable that
disclosure of Bingham's school and psychiatric records would have
changed the outcome of the trial.

Turning to Ignacak, petitioner showed that she had problems recalling things at school (Pet.'s Ex. A 42) and had interpersonal problems (Pet.'s Ex. A 46).  Ignacak testified that her memory problem was "not that bad" (Pet.'s Ex. A 50), and Keener testified that Ignacak "didn't really have any memory problems, or associative problems, or organizational problems." (Pet.'s Ex. A 64).  In light of this, the court could reasonably conclude that Ignacak's problems at school would have no bearing on her general testimonial capacity.  In addition, petitioner has yet to articulate how Ignacak's interpersonal problems would have affected her testimonial capacity in a material way, other than to speculate that she might have been hostile or irrational toward others.  Cf. Davis, 290 F.3d at 947 (noting that the petitioner "only argued to the state court that [the witness] was depressed, not delusional, and nothing in the record indicate[d] that her depression would cause her to misperceive reality").

In the alternative, petitioner argues that the trial court prevented him from laying a foundation for in camera review by cutting-off questions concerning Ignacak's interpersonal difficulties and by refusing to permit him to refresh Keener's recollection by referring to Ignacak's school records.   The Connecticut Supreme Court concluded that petitioner's inquiries concerning Ignacak's interpersonal difficulties were not appropriately tailored to elicit information relevant to the

issue for which the offer was made," which was "Ignacak's capacity accurately to perceive, recall and relate events." Bruno, 236 Conn. at 533. With regard to the argument that petitioner should have been permitted to use Ignacak's special education records to refresh Keener's recollection, the Court held that, in certain circumstances, a court should allow a witness access to a confidential document (assuming that witness has the authority to review it) without disclosure to counsel. Bruno, 236 Conn. at 536. In deciding whether to allow such review, the court should consider "the nature of the information sought" and "whether the witness whose memory the defendant seeks to refresh is the only person who feasibly could provide the information sought." Id. After articulating this standard, the Court found no abuse of discretion in the trial court's denial of petitioner's request to use the special education records to refresh Keener's memory. Id.

Petitioner has not demonstrated that the Connecticut Supreme Court's decision is contrary to, or an unreasonable application of, clearly established federal law. Even assuming the barred line of inquiry concerning Ignacak's interpersonal problems would have revealed that she was often hostile to others, this would not have called into question her testimonial capacity to such a degree that petitioner can be said to have received an unfair trial. And the court's refusal to permit petitioner to refresh

26

Keener's recollection did not materially prejudice him because he could have obtained the desired information in other ways, such as from Ignacak, who had already provided some details of her treatment on voir dire.

CONCLUSION

Accordingly, petitioner's motion for judgment (Doc. 24) is denied, and his application for a writ of habeas corpus is dismissed.  His motion for an evidentiary hearing (Doc. # 21) is denied as moot.  A certificate of appealability will not issue. The Clerk may close the file.

So ordered this 29th day of September 2006.


_____/s/_____
        Robert N. Chatigny
    United States District Judge